IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |  |
|---|---|---|
| CAROL WISZYNSKI, | * | |
| Plaintiff, | * | Case No.: GJH-17-3163 |
| v. | * | |
| UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 400, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Carol Wiszynski brings this action against Defendant United Food and Commercial Workers, Local 400 ("Local 400"), alleging that Local 400 violated her free speech rights set forth in the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq*. Presently pending before the Court is Local 400's Motion to Dismiss. ECF No. 16. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is granted.

**I.   BACKGROUND[1]**

Plaintiff was hired by Local 400, a chapter of the United Food and Commercial Workers labor organization (the "Union"), in August 1999 as a service representative and, in August 2009, was promoted to the position of coordinator for Defendant's union representatives covering the Maryland and Washington, D.C. geographical areas. ECF No. 12 ¶¶ 5–9. Plaintiff also became a dues-paying member of the Union upon her employment. *Id.* ¶¶ 6, 47. In November 2012, Local 400's President, Mark Federici, offered Plaintiff the position of

---
[1] Unless otherwise noted, the facts are taken from the Amended Complaint and assumed to be true.

Secretary-Treasurer, but, two weeks later, he withdrew the offer and offered Plaintiff the position of Executive Assistant instead, which she accepted. *Id* ¶¶ 12–13. In addition, Plaintiff was an elected member of Local 400's Executive Board starting in 2009. *Id.* ¶ 11.

As Executive Assistant, Plaintiff assisted Federici by organizing and leading meetings between him and company representatives regarding working conditions of Local 400 members. *Id.* ¶¶ 14-15. Additionally, Plaintiff reviewed grievances from Local 400 members and referred those that she deemed appropriate for arbitration to Local 400's law firm, Butsavage & Durkalski, P.C. ("B&D"). *Id.* ¶¶ 16–17. Plaintiff alleges that Federici and the partners in B&D "were and are close colleagues," *id.* ¶ 23, and that she became aware that B&D had avoided or delayed arbitration hearings yet was still receiving monthly retainer payments exceeding $55,000. *Id.* ¶¶ 19, 25.

On October 12, 2014, Plaintiff met with Local 400's Chief of Staff, Craig Simpson, and relayed her concerns about B&D. *Id.* ¶ 24. Simpson stated that he would talk with Federici and review B&D's bills. However, on October 27, 2014, Plaintiff was called into a meeting with Simpson and Federici and was told that "Local 400 was going in a new direction and that Defendant did not need her anymore." *Id.* ¶ 28. Local 400 provided Plaintiff with a waiver and settlement form, and Simpson stated that "it was in her best interest to leave and not talk to anyone." *Id.* ¶¶ 28, 33. Plaintiff then informed several co-workers, who were also Union members, that she had just been fired and left the building. *Id.* ¶ 37.

Thereafter, Local 400 paid Plaintiff two additional weeks of salary, for which Union dues were deducted, and approximately ten weeks of accrued vacation, covering the period through mid-January 2015. *Id.* ¶¶ 41, 42. Plaintiff and Local 400 attempted to settle their dispute in November and December 2014, and Plaintiff complied with Local 400's request that she not

attend the monthly Executive Board meetings during that time. *Id.* ¶ 45. Local 400 also proposed that Plaintiff refrain from "solicit[ing] any members of Local 400 for any purpose" and "discuss[ing] with or attempt[ing] to influence any member of Local 400 to vote for or against any candidate running for a Local 400 position" for a period of four years. *Id.* ¶ 44. After her termination, Plaintiff sent a check to Local 400 for her Union dues for November 2014 through mid-January 2015, *id.* ¶¶ 52, 53; however, in a letter dated February 20, 2015, Simpson informed Plaintiff that Local 400 refused to accept her dues for the month of January and claimed that the last dues received for Plaintiff were for November 14, 2014. *Id.* ¶ 54.

As a result of Local 400's failure to accept Plaintiff's union dues, Plaintiff was unable to attend Executive Board meetings in February 2015, retain her union membership, or run for union office in the September 2015 election cycle. *Id.* ¶¶ 51, 87.[2] Plaintiff alleges that although she had consistently supported Federici in Executive Board, staff, and membership meetings, *id.* ¶ 31, Local 400 took the aforementioned actions in retaliation for Plaintiff "speaking against and/or raising concerns about the conduct of Local 400's legal counsel and Defendant breaching its fiduciary [duties] and to deny her right to continue as an elected member of the Executive Board, and to deny her right as a member to run for Union office." *Id.* ¶ 96. Plaintiff brings one claim of "Violation of Union Members' Rights to Free Speech" under Title I of the LMRDA, 29 U.S.C. § 411(a)(2), and seeks recovery of lost wages and benefits, to include front and back pay, pensions and 401(k) contributions, and attorneys' fees.

---

[2] Pursuant to the Union's Constitution and By-laws, in order to remain in good standing with the Union, a member's dues must not be more than two months in arrears. ECF No. 12 ¶ 84. Furthermore, Local 400's By-laws provide that an individual must be a member of the Union continuously for a period of not less than one year prior to an election to be eligible to run in an election. *Id.* ¶ 49. Plaintiff alleges that Local 400 intentionally failed to process her union dues as part of an effort to deny Plaintiff her right to continue to be a member of the Union. *Id.* ¶ 56. Plaintiff further alleges that Local 400 advised other organizations employing Union members not to hire Plaintiff, and, after Plaintiff was hired by Giant on January 19, 2015, an employer which had a collective bargaining agreement with Local 400, Defendant refused to accept Plaintiff's dues for the period of January 19–31, 2015. ECF No. 12 ¶¶ 59–78.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the Plaintiff's claims, the Court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Naked assertion, devoid of further factual enhancement" is also insufficient to survive a motion to dismiss. *Id.*

## III. DISCUSSION

Plaintiff alleges that Defendant violated the LMRDA's free speech protections by terminating her employment with the Union, removing her from her elected position on the Executive Board, and denying her the right to continue as a member of Local 400. Plaintiff's

Amended Complaint implicates her rights as both an employee and union member, which the Court will address in turn.³

### A. Termination from Union Employment

Title I of the LMRDA grants union members the right:

> to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings.

29 U.S.C. § 411(a)(2).⁴ A labor organization may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter," including a member's right to free speech set forth in Title I. *Id.* § 529. In enacting the LMRDA, Congress sought to protect "rank-and-file union members—not union officers or employees." *See Finnegan*, 546 U.S. at 437; *see also Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997) ("These rights are limited, though, to individuals in their distinct capacities as members, not as officers or employees as such.")

But plaintiffs may possess dual status as both union members and union employees. In *Finnegan v. Leu*, the Supreme Court considered whether an employee's dual status immunized him from being discharged from union employment by the president of the union. *Finnegan*, 546 U.S. 431. In that case, the petitioners were both members and appointed business agents of a local union and openly supported the incumbent president during a union election. *Id.* at 433.

---

³ Plaintiff's Amended Complaint states that she was an elected member of the Executive Board starting in January of 2009, ECF No. 12 ¶ 11, but also states that she was appointed to the position of Executive Assistant, *id.* ¶ 13. It is unclear whether Plaintiff served on the Executive Board in a capacity separate from her appointed position as Executive Assistant. Whether Plaintiff was an elected or appointed member of the Executive Board is significant for purposes of Plaintiff's Free Speech claim, and Defendant argues that because she was only appointed to the Executive Board, her Free Speech claim must fail. *See* ECF No. 16-1 at 5 (citing *Finnegan v. Leu*, 456 U.S. 431, 432–33 (1982)). Drawing all reasonable inferences in Plaintiff's favor, the Court will assume that, at the time of her termination from Local 400, Plaintiff was an Executive Assistant in her capacity as a Local 400 employee and was an elected member of the Executive Board in her capacity as a Local 400 member.

⁴ The Court will cite to relevant provisions of the LMRDA as numbered in the U.S. Code, not the Act itself.

The incumbent lost the election, and the newly-elected president discharged the petitioners from their role as business agents because he felt that the petitioners were loyal to the incumbent president and would therefore be unable to follow and implement his policies and programs. *Id.* at 434.

The court found that the LMRDA's protections set forth in § 529 only refer to retaliatory actions "that affect a union member's rights or statutes as a *member* of the union," and that discharge from union employment "does not impinge upon the incidents of union membership" even though such discharge may affect their membership status. *Id.* at 437–38 ("Section [529] speaks in terms of disciplining 'members'; and the three disciplinary sanctions specifically enumerated—fine, suspension, and expulsion—are all punitive actions taken against union members as members.") (footnote omitted).

The court also recognized that a litigant may maintain an action under § 412 "to redress an 'infringement' of 'rights secured' under Title I" without stating a violation of § 529.[5] *Id.* at 439; *see also Maddalone v. Local 17, United Broth. of Carpenters and Joiners of America*, 152 F.3d 178, 183 (2d Cir. 1998) ("The free speech [§ 411(a)(2)] and due process [§ 529] rights guaranteed by the LMRDA are distinct from one another, and it is well established that a union member may bring a suit to redress a violation of [§ 411(a)(2)] free speech rights even if no due process violation is shown."). But the court found that regardless of whether the petitioners were discharged in retaliation for their support of the incumbent president, the overriding objective of the LMRDA can only be maintained if democratically-elected officials are free to select their own staff. *Finnegan*, 546 U.S. at 411 ("[f]or whatever limits Title I places on a union's authority to utilize dismissal from union office as part of a purposeful and deliberate attempt to suppress

---

[5] Section 412 states that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

dissent within the union, it does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own.") (citation and internal quotations omitted); *see also Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 353 (1989) ("Permitting a victorious candidate to appoint his own staff did not frustrate that objective [of democratic union governance]; rather, it ensured a union's 'responsiveness to the mandate of the union election.'" (quoting *Finnegan*, 546 U.S. at 441))). Recognizing that allowing elected officials to freely discharge their employees may infringe on the employees' rights as union members, the *Finnegan* court limited its holding to the discharge of policymaking and confidential employees reporting to elected union leaders, "leav[ing] open the question of whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees." *Finnegan*, 456 U.S. at 441, n.11.[6]

Here, Defendant removed Plaintiff from her appointed position as Executive Assistant to the President, and her termination is not protected under either § 412 or § 529 because her position fits squarely into the category of employees addressed in *Finnegan*. *See Witmeyer v. Brotherhood of Ry. Airlines & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 779 F.2d 206, 207 (4th Cir. 1985) ("the initial issue in determining [plaintiff's LMRDA free speech claim] is whether [plaintiff's] organizing activities constitute policymaking or confidential employment as contemplated by the Supreme Court in *Finnegan*. If so, it will not be necessary to consider the question reserved in footnote 11 of that decision."). As alleged, Plaintiff assisted Federici in leading meetings regarding working conditions of Local 400 members and deciding whether to refer member grievances to arbitration after they had already gone through Local

---

[6] The importance of protecting democratically-elected union leaders was further reinforced in the Supreme Court's latter decision in *Sheet Metal Workers' Int'l. Ass'n.*. 488 U.S. 347. There, an elected union business representative was removed from his position after he spoke out against a proposed dues increase. *Id.* at 350. In contrast to the plaintiff in *Finnegan*, the Supreme Court recognized that "[t]he consequences of removal of an elected official are much different" because "union members are denied the representative of their choice." *Id.* at 355.

7

400's own grievance procedure. ECF No. 12 ¶¶ 15–17. In performing these duties, Plaintiff's position "necessarily provided [her] with the opportunity to make union policy" or implement union policy. *See Witmeyer*, 779 F.2d at 208 (citing *Rutledge v. Aluminum, Brick & Clay Workers, Int'l. Union*, 737 F.2d 965, 967 (11th Cir. 1984)); *see also Cehaich*, 710 F.2d at 239 (finding that union benefits representative did not fit within *Finnegan's* exception because "[o]ne of the most sensitive functions performed by a union is the securing of benefits and resolution of issues surrounding the rights to benefits").

Plaintiff does not argue that her position as an Executive Assistant falls within the type of nonpolicymaking and nonconfidential role left outside the scope of *Finnegan*. *See* ECF No. 20 at 15. Instead, Plaintiff argues that her termination was not permissible under *Finnegan* because she never publically questioned or opposed Federici's policy decisions, and, as a result, did not infringe upon the ability of a democratically-elected leader to run the union. ECF No. 20 at 7.[7] However, *Finnegan* does not state that policymaking and confidential union employees may only be fired when they publically question their democratically-elected superiors. That the employee expressed her disagreement publically or privately is irrelevant—what is relevant is whether the employee's conduct impairs the elected official's ability to run the union and be "responsive to the will of their memberships." *Id.* at 436. As such, in order to ensure that unions are democratically governed, elected union officials, like Federici, are afforded the ability to manage their central staff as they see fit. As stated by the Supreme Court:

> the basis for the *Finnegan* holding was the recognition that the newly elected president's victory might be rendered meaningless if a disloyal staff were able to thwart the implementation of his programs. While such patronage-related discharges had some chilling effect on the free speech rights of the business agents, we found this concern outweighed by the need to vindicate the democratic choice made by the union electorate.

---

[7] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

*See Lynns*, 488 U.S. at 354–55.

To the extent that Plaintiff's discharge resulted in Plaintiff losing union-qualifying employment, the discharge, alone, did "not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees." *Finnegan*, 456 U.S. at 438. Terminating a union employee will necessarily have an impact on that employee's membership rights, but such an impact is permissible:

> No doubt this poses a dilemma for some union employees; if they refuse to campaign for the incumbent they risk his displeasure, and by supporting him risk the displeasure of his successor. However, in enacting Title I of the Act, Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff. Rather, its concerns were with promoting union democracy, and protecting the rights of union members from arbitrary action by the union or its officers.

*Finnegan*, 456 U.S. at 442*; see also Lynn*, 488 U.S. at 354 "(we acknowledged in *Finnegan* that the business agents' Title I rights had been interfered with, albeit indirectly, because the agents had been forced to choose between their rights and their jobs"). Therefore, Plaintiff is not entitled to relief as a result of her discharge from Local 400.

**B. Impacts to Membership**

Beyond her termination, Plaintiff alleges that Defendant took additional actions which prevented her from participating on the Executive Committee, obtaining another union-covered job, and tendering payment for her union dues. Courts have distinguished *Finnegan* and allowed plaintiffs to obtain relief under § 412 when union employees' rights as union members are directly infringed along with their termination from union employment. *Compare Cehaich v. International Union, United Auto., Aerospace and Agr. Implement Workers of America*, 710 F.2d 234, 238 (6th Cir. 1983) (holding that union employee could not maintain free speech claim because there was no fine, suspension, or disciplinary action taken against the employee and his

"status as a member of the union remained unchanged after his dismissal"); *Childs v. Local 18, Intern. Broth. of Elec. Workers*, 719 F.2d 1379, 1383–84 (9th Cir. 1983) (dismissing LMRDA claim because "even though appellant lost her job as a union business representative, she did not lose her membership in [the union] nor were her membership rights affected by her termination") *with Thompson v. Office and Professional Employees Intern. Union, AFL-CIO*, 74 F.3d 1492, 1503 (6th Cir. 1996) (holding that union employee could maintain free speech claim when employee was expelled from the union as part of his termination); *see also Maddalone*, 152 F.3d at 183 ("Where a [§ 412] claim is based on wrongful termination, we have said that the test under Title I is whether membership rights in the union were directly infringed by action taken with respect to the union member's employment status.") (internal citation and quotation marks omitted).

However, to state a retaliation claim under § 412, "a plaintiff must allege that the retaliation was in response to her exercise of a right guaranteed by some other provision of the LMRDA." *Trail v. Local 2850 UAW United Defense Workers of America*, 710 F.3d 541, 546 (4th Cir. 2013). Similar to the First Amendment protections afforded to government employees speaking on matters of public concern, Title I of the LMRDA protects speech that pertains to matters of union concern, encompassing speech that "relates to the general interests of the union membership at large." *See id.* (citing *Hylla v. Transp. Commc'ns Int'l Union*, 536 F.3d 911, 916–17 (8th Cir. 2008)).

In determining whether a union member spoke on matters of union concern, courts consider the content, form, and context of a given statement. *Id.* at 547 (citing *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012)). Plaintiff only alleges that she met with Simpson and "specifically asked . . . why Local 400's attorneys were not scheduling arbitrations and what

could be done because Local 400 was paying the attorneys large sums of money, even though the attorneys were not responding to the requests to arbitrate." ECF No. 12 ¶ 24. While Plaintiff alleges that her question *implicated* that Federici had breached his "fiduciary duties," *id.* ¶ 40, Plaintiff does not allege that she told Simpson, or anyone else, that Federici had breached his fiduciary duties or was involved in any nefarious behavior. *Trail*, 710 F.3d at 548 (noting that the content of plaintiff's speech was not of union concern because plaintiff did not allege that union officials "committed other, more serious wrongdoing, such as embezzlement or corruption").

Although union members would certainly be concerned if their dues were being spent on excessive legal bills, Plaintiff did not blame Federici for the excessive bills or "voice[] any substantive disagreement with the direction in which Federici [was] leading the Union" such that she raised a matter of union concern that warrants protection. *Id.* In addition, even if Plaintiff raised a genuine concern that Federici had breached his fiduciary duty to Local 400, she did not raise it with any other members; her statement was limited to Simpson, a fellow Local 400 employee. *See id.* at 548 (finding that plaintiff's speech did not involve a matter of union concern because she did not make the statements to any other union members but rather raised them through an informal union grievance process). Moreover, Plaintiff presented her concern directly to Simpson, not during an Executive Board meeting, suggesting that she was raising the issue in her capacity as a union employee, not a union member.[8] While a union member's reporting of a single instance of possible wrongdoing may raise a concern directly implicating union democracy, courts "cannot presume that all matters that transpire within a union office are of

---

[8] Although Plaintiff alleges that her removal from the Executive Board had a chilling effect on other board and union members, *see* ECF No. 20 at 14 (citing *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354 (1989)), Plaintiff does not suggest that any board or union members were aware of the circumstances underlying her termination or that she had raised any concerns about B&D. She only alleges that fellow employees knew she was terminated and that following her termination, she no longer attended Executive Board meetings. Therefore, the Amended Complaint does not plausibly allege that Plaintiff's termination or removal from the Executive Board had any practical chilling effect on other union members warranting relief under the LMRDA.

11

union concern, lest every allegation of every minor misstep by an official lay the groundwork for a federal suit." *Id.* at 549. Even when construing the factual allegations in Plaintiff's favor, Plaintiff has, at best, alleged that B&D failed to provide adequate legal services. But this falls short of the type of speech implicating a matter of union concern that warrants protection under the LMDRA. As such, even if Local 400 interfered with Plaintiff's union membership benefits, such conduct was not taken in retaliation for Plaintiff exercising her rights under the LMRDA, and Plaintiff's claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 16, shall be granted. A separate Order follows.

Dated: September 4, 2018

/s/
GEORGE J. HAZEL
United States District Judge